## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| SHEILA V. PRICE, on behalf of herself and all others similarly situated,<br><br>            Plaintiff,<br><br>v.<br><br>FIRST ADVANTAGE<br>BACKGROUND SERVICES CORP.,<br><br>            Defendant. | Case No. 1:17-cv-03393-WSD-WEJ<br><br>**FIRST  AMENDED  COMPLAINT -**<br>**CLASS ACTION**<br>**(JURY TRIAL DEMANDED)** |

Plaintiff Sheila Price ("Plaintiff"), by and through her attorneys, on behalf of herself and the Classes set forth below, brings the following Class Action Complaint against First Advantage Background Services Corp. ("First Advantage" or "Defendant").

### <u>INTRODUCTION</u>

1.     Recognizing that the content of consumer reports can have a significant impact on people's lives, Congress has chosen to regulate the procurement, use, and content of those reports through the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

2.     Plaintiff seeks to hold Defendant accountable for its willful and systemic violations of the FCRA and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. § 505, *et seq.* ("ICFA").

3.     Defendant has willfully violated the FCRA and ICFA by falsely accusing Plaintiff of using a Social Security Number ("SSN") that belongs to someone else.  This misreporting led to lost job opportunities.

4.     Defendant has also willfully violated the FCRA by failing to fully comply with Plaintiff's valid request for her full file.  Because Defendant has not disclosed the sources of the information in Plaintiff's file, Plaintiff has been unable to correct Defendant's false accusation that Plaintiff is using a SSN that belongs to someone else.

5.     Further, Defendant failed to correct Plaintiff's report after she disputed it and failed to disclose its reinvestigation procedures upon Plaintiff's request, despite being required by law to do so.

## **THE PARTIES**

6.     Plaintiff Sheila Price is an individual person and a resident of Calumet City, Illinois.

7.     Defendant First Advantage is a consumer reporting agency headquartered in Alpharetta, Georgia.

8.     Defendant is a consumer reporting agency as defined by the FCRA. Defendant provides consumer reports, including criminal background reports, to its clients, many of whom are employers seeking information on job applicants.  One

of the services Defendant also provides to its clients is commonly referred to as "adjudication," whereby Defendant grades job applicants and determines, based on the information in the report, whether the applicant meets the employer's eligibility requirements.

9.     Because Defendant provides consumer reports in Illinois regarding Illinois residents, it is also obligated to abide by the ICFA.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

11.     Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over the FCRA claims in this matter, as they present a federal question. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the ICFA claims, as they are part of the same case or controversy.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391. Defendant resides and is headquartered in this District, and the plurality of documents and witnesses in this matter will be located in this District.

## STATUTORY BACKGROUND

13.    Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for employment or housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

14.    While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

15.    15 U.S.C. § 1681e(b) requires consumer reporting agencies to follow reasonable procedures to ensure the maximum possible accuracy of the information they report.  As discussed below, Defendant routinely violates the FCRA by failing to follow reasonable procedures to ensure the maximum possible accuracy of the information it reports.

16.    15 U.S.C. § 1681g requires consumer reporting agencies to provide consumers with a copy of their files on request.  15 U.S.C. § 1681g(a)(2) requires consumer reporting agencies to identify the sources of the information in the consumer's file.

17.    15 U.S.C. § 1681i(a)(7) requires consumer reporting agencies to provide consumers with a copy of the procedures they use to reinvestigate items of disputed accuracy on their reports.

18.    The ICFA makes it illegal to engage in "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact..." 815 Ill. Comp. Stat. § 505/2.

## ALLEGATIONS RELATING TO PLAINTIFF

19.    In April 2016, Plaintiff applied for employment with non-party Arise Virtual Solutions, Inc. ("Arise").  As part of that application, Arise purchased a consumer report about Plaintiff from Defendant.  (*See* Ex. A, pp. 15-19.)

20.    The report that Defendant provided to Arise had three main substantive sections: a "Social Security Number Validation," a "Social Security Verification," and a criminal records check.  (*Id.*)

21.    Two of those sections were correct, and contained no red flags regarding Plaintiff.  The report correctly indicated that Plaintiff has no criminal record, and the "Social Security Number Validation" section correctly indicated

that Plaintiff's SSN was valid (meaning it is a number that was issued by the Social Security Administration), and is not associated with someone who is deceased. (*Id*.)

22.    The "Social Security Verification" section, however, was flawed. Specifically, in that section, Defendant incorrectly concluded that there was a "HIGH PROBABILITY SOCIAL SECURITY NUMBER PROVIDED BELONGS TO ANOTHER CONSUMER."

23.    Based on its conclusion that there was a high probability that the SSN Plaintiff provided belonged to someone else, Defendant deemed Plaintiff "Ineligible" to work for Arise.  (*Id*.)

24.    Defendant's reporting was inaccurate.  The SSN Plaintiff provided was her own.

25.    Defendant's inaccurate reporting caused Plaintiff's employment application to Arise to be unsuccessful, causing loss of income and emotional distress.

26.    Plaintiff has attempted to apply to multiple positions with Arise, and each time her application has been thwarted by Defendant's misreporting regarding Plaintiff using someone else's SSN.

27.     Defendant's labeling of consumers as having a "high probability" of using someone else's SSN is antithetical to the FCRA's mandate of maximum possible accuracy.  Whether a person is using their own SSN or not is a binary factual question.  An accurate answer to that question can never be supplied by a probability.

28.     Further, before labeling consumers as having a "high probability" of using someone else's SSN, Defendant does not utilize reasonable procedures to investigate this conclusion.  For example, Defendant does not reach out to the consumer to seek additional proof of identity or information on when and how the individual acquired their SSN.

29.     For other aspects of reports it issues, such as reports verifying an individual's education and employment history, Defendant sometimes contacts the subject of the report to seek more information, or requires its customers to provide information from the client.  For example, when Defendant includes an educational history check in its reports, Defendant requires its customers (employers) to obtain information from the applicant about where the applicant went to school.  When Defendant conducts employment history checks, it requires its customers (employers) to obtain information regarding where the applicant previously worked.

30.     Similarly, for certain kinds of background reports, such as reports including motor vehicle information, Defendant requires its customers (employers) to secure the applicant's consent to access data that is only accessible with consumer consent.

31.     Defendant does not undergo similar efforts with respect to its SSN reporting.  For example, Defendant could require its customers to ask applicants when or where applicants' SSNs were issued.  Defendant could also inform consumers of a potential SSN mismatch and ask them to provide proof that the SSN they submitted belongs to them, such as a copy of a Social Security card.

32.     At the time of the report, Plaintiff had no fraud alerts or other indicia of fraud on her First Advantage report.

33.     Defendant appears to attempt to verify SSNs based on a comparison between the subject's birthday and general historical records indicating when and where SSNs were issued.

34.     For SSNs issued prior to 2011, the first three digits of the number (often called the Area Number) indicated the geographic area in which the number

was issued, and the following two digits (often called the Group Number) can be compared with historical charts to determine when the number was issued.[1]

35.    Comparing where and when a SSN was issued with a person's date of birth, however, is not an acceptable method in determining whether that individual is using their own SSN.  Not everyone obtains a SSN at birth; some people go years before obtaining one.

36.    Defendant's unreliable method of evaluating SSNs by mechanically comparing birth dates with records indicating when various SSNs were issued has caused it to issue inaccurate reports for many individuals other than Plaintiff.  Like Plaintiff, there are many people whose assigned SSN shows as having been issued in a year other than the year in which the individual was born.

37.    At least one other suit has been brought alleging that Defendant incorrectly determined that an individual was likely not using their own SSN. *Grimm v. First Advantage Background Services Corp.*, No. 1:17-cv-01967 (D. Md.).

38.    The Social Security Administration ("SSA") does not make SSNs publically available to employment screening firms.  Rather, SSN validation is only available from the SSA once an individual has been hired.

---

[1] *See* https://www.ssa.gov/history/ssn/geocard.html, last accessed August 30, 2017.

39.     Defendant knows that without access to information from the SSA it cannot produce accurate pre-employment SSN screening.  Yet, rather than lose out on potential income, Defendant chooses to sell its product anyway.

40.     Defendant, as well as Defendant's competitors in the employment screening industry, are well aware of the risks of inaccuracy that come with pre-employment SSN screening.

41.     There is no requirement that employment screening companies include information about the validity or verification of an applicant's SSN in their reports.

42.     Many of Defendant's competitors either do not sell SSN screening products at all, or if they do, include a disclaimer which is substantially more detailed than Defendant's statement about probability.   For example, one of Defendant's competitors includes the following disclaimer on its reports:

> The purpose of Social Security Trace/Address Locator report is to locate jurisdictions for purposes of expanding the scope of the criminal background check.  The Social Security number provided by the applicant is not checked against the Social Security Administration database since the Social Security Administration database generally is not accessible for pre-employment screening purposes.  In determining whether a number appears to be validly issued, SSN protocols are applied but please note that due to the randomization of the issuance of social security numbers, any conclusion regarding whether the number is valid may not be accurate for recently issued numbers.

43.   Defendant knows the same facts as the competitor quoted above, but chooses to report unreliable and inaccurate SSN information regardless.  Defendant not only includes a statement in its reports stating that the SSN has a "high probability" of having been issued by someone else, Defendant also adjudicates applicants as ineligible for hire based on this information.

44.   The statement that the SSN provided by a consumer has a "high probability" of belonging to someone else is inherently incompatible with the FCRA's requirement that consumer reporting agencies follow reasonable procedures to assure "maximum possible accuracy" of the information they report.

45.   Defendant's probabilistic statement is also literally false.   The probability that Plaintiff is using someone else's SSN is zero.  She is using her own SSN.

46.   Nor is Defendant's statement reasonable in the first instance.  Given that the SSA does not make SSNs available to pre-employment screening agencies, Defendant cannot possibly have conducted, or have access to, any studies or other evidence regarding the probability that people who are flagged by Defendant's algorithm are, in fact, using someone else's SSN.  Absent this evidence, Defendant cannot make any reasonable claims which purport to be based on probabilities.

47.   Attempting to determine why Defendant had falsely informed her potential employer that she was using someone else's SSN, Plaintiff, through counsel, submitted to Defendant a request for her file, pursuant to 15 U.S.C. § 1681g.  (Ex. B.)

48.   Defendant responded in correspondence dated February 9, 2017.  (Ex. A.)  Defendant's response attaches a number of reports that it has created regarding Plaintiff, but fails to identify any of its sources, as required by § 1681g(a)(2). Rather, the reports state that the Social Security Verification is based on review of "consumer credit files contained in the databases of nationwide credit reporting agencies," without specifying which of those nationwide credit reporting agencies was consulted.  This left Plaintiff in the dark about where Defendant had received its erroneous information, and unable to correct the misinformation at the source.

49.   Notably, despite Defendant's alleged concern that Plaintiff was involved in some sort of identity theft, it still responded to Plaintiff's § 1681g request by sending her a copy of her file, indicating that Defendant's concerns about identity theft were not genuine and that even Defendant did not believe that there was a "high probability" that Plaintiff was using someone else's SSN.

50.   Defendant, as a matter of policy and practice, does not disclose its sources in response to § 1681g requests.

51.   On May 19, 2017, Plaintiff sent Defendant a letter disputing the results of her background check.  (Ex. C.)  This letter made it clear that Plaintiff's SSN belongs to her, and enclosed a copy of her Social Security card.  (*Id.*)

52.   In response to Plaintiff's dispute, Defendant failed to correct Plaintiff's report.   In its responsive letter, Defendant indicated that it had "completed [a] reinvestigation of the disputed information and [had] verified that the original information provided on the background report was reported accurately.  Therefore, no change has been made to the background report."  (Ex. D.)

53.   Plaintiff has expended significant time and effort in attempting to determine why she was labeled as ineligible for employment by Defendant, and attempting to fix the problem, including retaining counsel, signing various authorizations and sending dispute letters to Defendant.  The fact that Defendant has refused to correct its report, and has refused to disclose the source of its inaccurate information, has caused Plaintiff significant distress, because, in her continued job search, she never knows when an employment opportunity could be lost due to Defendant's misreporting.

54.   At the time that Defendant "verified" its original information, regarding the purported invalidity of Plaintiff's SSN, Defendant did not have legal

access to the SSA's database.  Defendant was thus unable to meaningfully verify the accuracy of the information it reported and, pursuant to § 1681g(a)(5), should have deleted the information.

55.    Defendant clearly failed to complete a meaningful reinvestigation of the information disputed by Plaintiff, as required by 15 U.S.C. § 1681i(a). Plaintiff's letter spelled out precisely what the inaccuracy in her report was, and included all relevant documentation.   Defendant, despite receiving this information, failed to correct its own error.

56.    After a dispute and reinvestigation, a consumer has the right to request a copy of the procedures used to reinvestigate the disputed information.  15 U.S.C. § 1681i(a)(7).  Plaintiff made such a request by letter on July 7, 2017.  (Ex. E.)

57.    Defendant failed to respond to Plaintiff's request for reinvestigation procedures.  This failure is indicative of the fact that Defendant knows it does not have reasonable reinvestigation procedures.

58.    Defendant, as a matter of policy and practice, does not respond to requests for reinvestigation procedures.

## **CLASS ALLEGATIONS**

59.    Plaintiff asserts her claims on behalf of the Classes defined below:

> ***The Illinois Social Security Number Class:*** All natural persons in Illinois who, at any time from the date two years prior to the filing of this Complaint and continuing through the resolution of this case, were the subject of a report issued by Defendant which inaccurately concluded that there was a "HIGH PROBABILITY SOCIAL SECURITY NUMBER PROVIDED BELONGS TO ANOTHER CONSUMER".
>
> ***The Disputes Sub-Class:*** All members of the Illinois Social Security Number Class who filed a dispute with Defendant.
>
> ***The Reinvestigation Procedures Class:*** All natural persons who, at any time from the date two years prior to the filing of the original Complaint and continuing through the resolution of this case, sent Defendant a request for their reinvestigation procedures pursuant to 15 U.S.C. § 1681i(a)(7).

60. Plaintiff asserts Counts I and II on an individual basis, Count III on behalf of the Reinvestigation Procedures Class, which she seeks to certify pursuant to Fed. R. Civ. P. 23(b)(3), and Count IV on behalf of the Social Security Number Class and Disputes Sub-Class, which she seeks to certify pursuant to Fed. R. Civ. P. 23(b)(2).

61. <u>Numerosity</u>:  The Classes are so numerous that joinder of all class members is impracticable.  Defendant produces reports nationwide, and hundreds, if not thousands, of Illinois consumers have been labeled by Defendant as having had a high probability that the SSN they provided belonged to someone else. Many of those individuals nationwide subsequently disputed and requested reinvestigation procedures from Defendant.

62.  <u>Typicality</u>:  Plaintiff's claims are typical of the class members' claims.  Defendant treated Plaintiff in the same manner as other class members.

63.  <u>Adequacy</u>:  Plaintiff will fairly and adequately protect the interests of the Classes, and has retained counsel experienced in complex class action litigation.

64.  <u>Commonality</u>:  Common questions of law and fact exist as to all members of the Classes and predominate over any questions solely affecting individual members of the Classes.  These common questions include:

  a. Whether Defendant violated the FCRA by choosing to report on the probabilistic likelihood of an individual using a SSN that belonged to someone else, despite knowing that in many instances its labeling would be wrong, and would result in individuals being unfairly denied employment;

  b. Whether Defendant violated the FCRA by failing to properly respond to § 1681g requests;

  c. Whether Defendant violated the FCRA by failing to properly respond to disputes and by continuing to report invalid information in spite of the fact that the information Defendant reported was, by its own admission, unverifiable;

    d.  Whether Defendant violated the FCRA by failing to properly respond to requests for reinvestigation procedures;

    e.  Whether Defendant's violation was willful;

    f.  Whether Defendant is a consumer reporting agency and subject to the requirements of the FCRA;

    g.  The proper measure of statutory and punitive damages; and

    h.  The proper form of declaratory relief.

65.    Class certification of Count III is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA.  Members of the Classes do not have an interest in pursuing separate actions against Defendant, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution.  Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices.  Moreover, management of this action as a class action will not present

any likely difficulties.  In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

66.     Class certification of Count IV is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant's illegal policy for reporting SSN information is uniform across the Classes, and final injunctive relief is therefore appropriate for the Classes as a whole.

**COUNT I**
**15 U.S.C. § 1681e(b)**
***Failure to Follow Reasonable Procedures***
***On Behalf of Plaintiff individually***

67.     Plaintiff incorporates the paragraphs above.

68.     Defendant failed to comply with 15 U.S.C. § 1681e(b) by failing to maintain reasonable procedures to avoid reporting false information regarding SSNs.

69.     The foregoing violations were negligent.

70.     The foregoing violations were willful.

71.     Defendant acted in negligent, deliberate, and reckless disregard of its obligations and the rights of Plaintiff and class members under 15 U.S.C. § 1681e(b).  Defendant's negligent and willful conduct is reflected by Paragraphs 19-58 above and, *inter alia*, the following:

a. Defendant takes no action to determine if the information it is reporting regarding the high probability that the consumer is using someone else's SSNs is accurate, and has not established any reliable procedures to determine this probability;

b. Defendant knows that its reporting regarding SSNs is not to be relied upon.  Rather than stating facts, it states that there is a high probability that an individual is not using their own SSN.  This language is a transparent effort to avoid the requirements of the FCRA;

c. Defendant's apparent method of comparing SSN issue dates and locations with birth information fails to take into account individuals who did not obtain a SSN at birth.  Defendant could have used procedures to ensure accuracy of this information, such as seeking additional information from the consumer, but failed to do so;

d. The FCRA was enacted in 1970; Defendant has had over 40 years to become compliant;

e. Defendant's conduct is inconsistent with the Federal Trade Commission's ("FTC") longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

f. Defendant knew or had reason to know that Defendant's conduct violated the FCRA; and

g. By failing to adopt reasonable procedures, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

72. Defendant's conduct caused Plaintiff to lose a job opportunity, causing economic harm.

73.     Plaintiff is entitled to actual damages, and statutory damages of not less than $100 and not more than $1,000 per violation.  Plaintiff is also entitled to punitive damages and to recover costs and attorneys' fees.

**COUNT II**
**15 U.S.C. § 1681g**
***Failure to Provide File Disclosure***
***On Behalf of Plaintiff Individually***

74.     Plaintiff incorporates the paragraphs above.

75.     Defendant failed to produce Plaintiff's full file, despite Plaintiff's valid request pursuant to 15 U.S.C. § 1681g.  Specifically, Defendant failed to identify the sources of the information in the report, in violation of 15 U.S.C. § 1681g(a)(2).

76.     Defendant acted in negligent, deliberate, and reckless disregard of its obligations and the rights of Plaintiff under 15 U.S.C. § 1681g.  Defendant's negligent and willful conduct is reflected by Paragraphs 19-58 above and, *inter alia*, the following:

    a. Section 1681g is very simple – Defendant must provide a copy of the files it has on consumers upon request, and identify the sources of information.  Defendant's failure to identify its sources is inexplicable;

    b. The FCRA was enacted in 1970; Defendant has had over 40 years to become compliant;

c. Defendant's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute, which explicitly requires the disclosures of sources;

d. Defendant knew that the FRCA requires disclosure of sources, and chose not to do so; and

e. By failing to disclose its sources, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

77.    Plaintiff is entitled to statutory damages of not less than $100 and not more than $1,000 for this violation.  Plaintiff is also entitled to punitive damages and to recover costs and attorneys' fees.

## COUNT III
### 15 U.S.C. § 1681i(a)(7)
### *Failure to Disclose Procedures*
### *On Behalf of Plaintiff and the Reinvestigation Procedures Class*

78.    Plaintiff incorporates the paragraphs above.

79.    Defendant failed to comply with 15 U.S.C. § 1681i(a)(7) by failing to disclose its reinvestigation procedures upon valid written request.  The foregoing violations were negligent.

80.    The foregoing violations were willful.

81.    Defendant acted in negligent, deliberate, and reckless disregard of its obligations and the rights of Plaintiff and Reinvestigation Procedures Class

members under 15 U.S.C. § 1681i(a)(7).   Defendant's negligent and willful

conduct is reflected by Paragraphs 19-58 above and, *inter alia*, the following:

    a. Defendant simply fails to respond to requests for reinvestigation procedures, which it is required by law to provide;

    b. The FCRA was enacted in 1970; Defendant has had over 40 years to become compliant;

    c. Defendant's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

    d. Defendant knew or had reason to know that Defendant's conduct violated the FCRA;

    e. Defendant knows that its reinvestigation procedures are inadequate, and chooses not to disclose them to avoid exposing their inadequacy;

    f. By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

82.   Plaintiff and the Reinvestigation Procedures Class are entitled to

actual damages, and statutory damages of not less than $100 and not more than

$1,000 per violation.   Plaintiff and the Reinvestigation Procedures Class are also

entitled to punitive damages and to recover costs and attorneys' fees.

## COUNT IV
## 15 U.S.C. § 1681i(a)(7)
## *Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act*

### *On Behalf of Plaintiff, the Illinois Social Security Number Class and the Disputes Sub-Class*

83.     Plaintiff incorporates the paragraphs above.

84.     The ICFA makes it illegal to use "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact..." 815 Ill. Comp. Stat. § 505/2.

85.     Defendant's practice of declaring that individuals have a "high probability" of using someone else's SSN is both unfair and deceptive, because (1) Defendant's methods for making this determination are inherently unreliable, and (2) whether someone is using their own SSN is a binary question – answering it with a probability is always inaccurate.

86.     Defendant's practices harm consumers because they damage consumers' employment prospects, and they are consumer-oriented because they communicate damaging information about consumers at a time when they are applying for employment.

87.    Plaintiff, the Illinois Social Security Number Class, and the Disputes Sub-Class are entitled to injunctive relief and reasonable attorney's fees and costs. 815 Ill. Comp. Stat. § 505/10a.

## **PRAYER FOR RELIEF**

88.    WHEREFORE, Plaintiff, on behalf of herself and the Classes, prays for relief as follows:

    a.  Determining that this action may proceed as a class action under Fed. R. Civ. P. 23;

    b.  Designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the Classes;

    c.  Issuing proper notice to the Classes at Defendant's expense;

    d.  Declaring that Defendant violated the FCRA;

    e.  Declaring that Defendant acted willfully, in knowing or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

    f.  Awarding actual, statutory and punitive damages as provided by the FCRA;

    g.  Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

h.  Granting injunctive relief and attorneys' fees and costs as provided by the ICFA;

i.  Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

89.   Plaintiff and the Classes demand a trial by jury.

Respectfully submitted,

Dated:  October 26, 2017

/s/E. Michelle Drake
BERGER & MONTAGUE, P.C.
E. Michelle Drake, SBN 229202
Joseph C. Hashmall (*pro hac vice*)
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Telephone:  (612) 594-5999
Facsimile:  (612) 584-4470
emdrake@bm.net
jhashmall@bm.net

Gary B. Andrews, Jr., SBN 019375
Blake Andrews Law Firm, LLC
1831 Timothy Dr.
Atlanta, GA 30329
Telephone: (770) 828-6225
blake@blakeandrewslaw.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 26, 2017, I electronically filed the foregoing FIRST AMENDED COMPLAINT with the Clerk of Court using the CM/ECF system, which will cause notice to be sent to all counsel of record.

Dated: October 26, 2017

/s/E. Michelle Drake
E. Michelle Drake, SBN 229202
Joseph C. Hashmall
(*pro hac vice*)
BERGER & MONTAGUE, P.C.
43 SE Main St, Suite 505
Minneapolis, MN 55414
Tel.: 612.594.5999
Fax: 612.584.4470
Email: emdrake@bm.net
    jhashmall@bm.net

Gary B. Andrews, Jr., SBN 019375
Blake Andrews Law Firm, LLC
1831 Timothy Dr.
Atlanta, GA 30329
Tel.: 770.828.6225
Email: blake@blakeandrewslaw.com

*Counsel for Plaintiff*